# EXHIBIT 9

6/13/2017 Schmid Depo. Tr. Excerpts

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

MARSHALL DIVISION

TRAXXAS, L.P.,              )
    Plaintiff,           )
                                ) Civil Action No.
v.                      ) 2:16-cv-768-JRG-RSP
HOBBICO, INC., et al.,      )
    Defendants.          )

    The video deposition of STEVEN R. SCHMID, Ph.D., P.E., FASME, called for examination pursuant to Notice and the Rules of Civil Procedure for the United States District Courts pertaining to the taking of depositions, taken before Gina Callahan, a notary public within and for the County of Iroquois and State of Illinois, at 191 North Wacker Drive, Suite 3700, Chicago, Illinois, on the 13th day of June, 2017, at the hour of 9:58 a.m.

```
 1   APPEARANCES:
 2        THE DAVIS FIRM, P.C., by
 3        MR. EDWARD CHIN
 4        213 North Fredonia Street, Suite 230
 5        Longview, Texas  75601
 6        (903) 230-9090
 7        echin@bdavisfirm.com
 8             Representing the Plaintiff;
 9
10        DRINKER, BIDDLE & REATH, LLP, by
11        MR. WILLIAM S. FOSTER, JR. and
12        MR. BRIAN C. RUPP
13        191 North Wacker Drive, Suite 3700
14        Chicago, Illinois  60606
15        (312) 569-1000
16        william.foster@dbr.com
17        brian.rupp@dbr.com
18             Representing the Defendants
19             AARMA Durango and Hobbico, Inc.;
20
21
22
23
24
25
```

STEVEN R. SCHMID, Ph.D., P.E., FASME - 6/13/2017

```
 1  APPEARANCES CONTINUED:
 2       HALTOM & DOAN, by
 3       MR. JOSHUA R. THANE
 4       6500 Summerhill Road, Suite 100
 5       Texarkana, Texas  75503
 6       (903) 255-1000
 7       jthane@haltomdoan.com
 8            Representing the Defendant
 9            The Firelands Group;
10
11  ALSO PRESENT:
12       Kevin Ingstrup, videographer.
13
14
15
16
17
18
19
20
21
22
23
24
25
```

**STEVEN R. SCHMID, Ph.D., P.E., FASME - 6/13/2017**

```
 1                       I N D E X
 2   WITNESS                                    EXAMINATION
 3   STEVEN R. SCHMID, Ph.D., P.E., FASME
 4     By Mr. Chin                                        5
 5     By Mr. Foster                                    204
 6
 7
 8
 9
10                      E X H I B I T S
11   NUMBER           DESCRIPTION              MARKED FOR ID
12   Schmidt Deposition
13     Exhibit 1        CV                                13
14     Exhibit 2        Case list                         75
15     Exhibit 3        Declaration                       88
16     Exhibit 4        '951 patent                      119
17     Exhibit 5        Dictionary of Mechanical
18                      Engineering                      124
19     Exhibit 6        '541 patent                      153
20
21
22
23
24
25
```

**STEVEN R. SCHMID, Ph.D., P.E., FASME - 6/13/2017**

```
 1         THE VIDEOGRAPHER:  Today's date is June
 2   13th, 2017.  This is the deposition of
 3   Dr. Steven Schmid in the matter of Traxxas,
 4   L.P., versus Hobbico, Inc., et al.
 5         We're on the record at 9:58 a.m.
 6         Will counsel please state their
 7   appearances, after which the court reporter will
 8   swear in the witness.
 9         MR. CHIN:  Edward Chin for plaintiff
10   Traxxas, L.P.
11         MR. FOSTER:  William Foster for
12   defendants AARMA Durango, Limited and Hobbico,
13   Inc.
14         MR. THANE:  John Thane with Haltom and
15   Doan on behalf of the Firelands Group.
16                (Whereupon, the witness was duly
17                 sworn.)
18         STEVEN R. SCHMID, Ph.D., P.E., FASME,
19   having been first duly sworn, was examined and
20   testified as follows:
21                      EXAMINATION
22   BY MR. CHIN:
23      Q.  Good morning.  Please state your full
24   name.
25         MR. THANE:  And, Counsel, just before we
```

1  get going, if I could put on the record that
2  we've reached an agreement than an objection by
3  one defendant will be good for the other
4  defendant as well, to keep from having multiple
5  rounds of objections today.
6          MR. CHIN:  Yes.  For this deposition,
7  agreed.
8          MR. THANE:  Thank you.
9  BY MR. CHIN:
10     Q.    Please state your full name.
11     A.    Steven Rolland Schmid.
12     Q.    Mr. Schmid, what is your present work
13  address?
14     A.    There is a number of them.
15     Q.    What's the primary one that you get
16  mail one?
17     A.    It is a hard one to answer.  But let's
18  just say that I'm here today because of Golden
19  Dome Engineering.  That would be 66737 Mulberry
20  Road, Lakeville, Indiana.
21     Q.    What is Golden Dome Engineering?
22     A.    So it is a corporation my wife started
23  when she became a consultant, and I do my
24  consulting through that company, as well.
25     Q.    All right.  And what is your

1     Q.   Well, let's look at your table of
2  contents.  You've got Section 3, disputed claim
3  terms and there is 3A through 3J.  Do you see
4  that?
5     A.   Yes.
6     Q.   For example, 3A is the word, the claim
7  term chassis, right?
8     A.   Yes.
9     Q.   And you give -- in that section, you
10 give a proposed construction for the word
11 chassis, correct?
12    A.   Yes.
13    Q.   And when you give that proposed term,
14 that's your way of telling the Court you believe
15 that your proposed construction is what a person
16 of ordinary skill in the art would understand --
17 would understand what the term chassis means,
18 right?
19         MR. FOSTER:  Objection.  Form.
20         THE WITNESS:  That is correct.
21 BY MR. CHIN:
22    Q.   Okay.  At what time frame, for the word
23 chassis?  Let's use that as an example.
24    A.   Give me an example.
25    Q.   I just gave you an example.  The word

1  chassis.  What time frame are you applying to
2  that for what a person of ordinary skill in the
3  art would believe the construction to be?
4      A.   Always.  A person of ordinary skill in
5  the art, if you have that requisite of that
6  level of skill, they all know what a chassis is.
7      Q.   For all time?
8      A.   If you're saying prerequisite, that
9  they're a person with ordinary skill in the art,
10 which I've defined as having a bachelor's degree
11 with two years' experience, everybody, every one
12 of those mechanical engineers knows what a
13 chassis is.
14     Q.   Whether it is a mechanical engineering
15 graduate from the 1930s to the year 2017, they
16 would all have the same view; is that your
17 testimony?
18         MR. FOSTER:  Objection.  Form.
19         THE WITNESS:  So I am not sure about
20 every university, right, because, you know,
21 let's not bring USC into this.  Right.  But
22 chassis is a term of art that dates back to the
23 1700s.  So I think it is something that's been
24 well understood by engineers for literally
25 centuries.

1  BY MR. CHIN:
2      Q.   Okay.  Do you know where in your
3  declaration you gave a proposed construction for
4  the word chassis specifically?
5      A.   I think there is a couple, but
6  certainly, there is one in 29.
7      Q.   Paragraph 29?
8      A.   Paragraph 29.
9      Q.   There you go.  Paragraph 29, the bottom
10 of page 7.  At the bottom of page 7, you write,
11 "as explained below, it is my opinion that in
12 the context of asserted claims 27 and 43 of the
13 '951 patent, a POSITA -- and that's your
14 abbreviation of a person of ordinary skill in
15 the art?
16     A.   Yes.
17     Q.   "A POSITA would understood the term
18 chassis to mean a horizontally extending base
19 frame of the vehicle that defines a longitudinal
20 centerline for the vehicle and which provides a
21 vertical reference for the spatial relationship
22 between the transmission, drive shaft and the
23 steering control."
24          Did I read that right?
25     A.   Yes.

1        In your declaration, if you'd turn to
2 page 36, please.
3   A.  Yes.
4   Q.  Section H.
5        Section H relates to the term one or
6 more or the phrase one or more wires separated
7 from immediate surroundings, preventing passage
8 of contaminants past or between the one or more
9 wires, right?
10   A.  Yes.
11   Q.  And that term is found, that phrase is
12 found in the '040 patent and the '541 patent,
13 right?
14   A.  Yes.
15   Q.  And the definition that you provide for
16 that phrase is found at the end of paragraph 95
17 on the top of page 37 of your declaration; is
18 that right?
19   A.  Yes.
20   Q.  Okay. And the definition you provide
21 is one or more separate and distinct wires, not
22 including a bundle of wires, in preventing
23 passage of contaminants between the one or more
24 separate and distinct wires; is that right?
25   A.  Yes.

1   Q.   Why did you introduce the phrase not
2   including a bundle of wires?
3   A.   Because in -- it is explained in
4   paragraph 97.  It is part of the patent
5   prosecution.  That can differentiate itself from
6   prior art, this patent excluded the concept of
7   the bundle.
8   Q.   And when you say bundle of wires, what
9   is that?  How do you define a bundle of wires?
10  A.   A group of wires.
11  Q.   Okay.  You need at least one wire?
12  A.   So the way it was described in this
13  patent was you had the plurality of wires inside
14  of a sheave or tube.  We have these electrical
15  cords is a great example of at least two wires
16  that's inside of a shroud or tube, but you could
17  have many.
18  Q.   I'm trying to understand what you mean
19  by a bundle of wires.
20  A.   A plurality of wires.  More than one.
21  Q.   What would that look like, a bundle of
22  wires?
23  A.   So I'm staring right at them.  These
24  cables that run, power cables, these cables have
25  pluralities of wires in them and surrounded by a

1  sheave or a ribbon or tube.  So that's what a
2  bundle of wires is.
3     Q.   So, for example, you've got this, pick
4  up something on the table here.  If you see a
5  bundle of wires, do you see a bundle of wires
6  here?
7          MR. FOSTER:  Objection.  Form.
8          THE WITNESS:  You see the exterior
9  protective coating.
10 BY MR. CHIN:
11    Q.   Pick one up.  I want to make sure it is
12 on video.  Okay.  That to you is a bundle of
13 wires?
14    A.   This one has got at least two in there.
15    Q.   That black wire you just picked up,
16 that is a bundle of wires?
17    A.   It's got more than one, yes.  It is a
18 bundle.
19    Q.   Because if you opened up the outside
20 black sheath, you would find what?
21    A.   I'm sure that counsel wouldn't mind us
22 cutting it open, just for science sake, just to
23 demonstrate.
24    Q.   It is not my wire.
25         MR. THANE:  I object to my power cord

1  All right.  Even if it is a solid wire, you've
2  got two of them, so it would be a bundle, a
3  bundle of two.
4     Q.   When they separate at the end, one goes
5  in one post and the one goes to the other post.
6  At the ends where they go into the speaker, are
7  they bundled or unbundled?
8     A.   They're unbundled to make the
9  connections, just like Abae shows in their
10 patent.
11    Q.   Before they split, they're bundled?
12    A.   They're bundled.
13    Q.   I'm trying to figure out where you're
14 drawing the line on bundled, unbundled.
15    A.   Yes.
16    Q.   Those two in my example, those copper
17 wires would be bundled up until the point they
18 start splitting like a Y, right?
19    A.   Right.  And two is not giving the right
20 impression of why you have bundles.  If you
21 picture six, ten wires that you then wrap
22 electrical tape around them, that's a bundle of
23 wire.  Instead of electrical tape, you could
24 have a rubber tube around them.  That's a bundle
25 of wires.  A number of wires that can act

```
 1  independently but that use the same space to
 2  travel.  It makes things a lot neater, lets you
 3  control where the wires are going a lot more if
 4  you have a bundle.
 5       Q.   In defining a bundle of wires, as
 6  you've used it here in this definition, does it
 7  depend on how those wires are arranged
 8  physically in relation to each other or does it
 9  depend on their function, or both?
10            MR. FOSTER:  Objection.  Form.
11            THE WITNESS:  It doesn't matter.
12  BY MR. CHIN:
13       Q.   I'm sorry?
14       A.   It doesn't matter.
15       Q.   I'm not sure I quite understand in
16  terms of it doesn't matter.  I mean, don't you
17  need -- for example, don't you need to see how
18  physically they're arranged to decide if it is a
19  bundle of wires or not?
20       A.   More than one, it is a bundle.  It
21  doesn't matter.  Anything else, you're going to
22  be saying, you know, does the red one go next to
23  the green one, the green one goes next to the
24  blue one.  No one cares.
25       Q.   If one wire is three feet away from the
```

1  other wire, they're not a bundle anymore, right?
2  That's what I mean in terms of physical
3  relationship to each other.  Where do you draw
4  the line, if you could explain to them?
5       A.   If you bundle them together, they're in
6  very close proximity.  In fact, the rubber
7  insulation coating is probably in contact for
8  all and it is one contiguous cross section.  So
9  that's what I would tell you.
10           But it's exactly like you see every day
11 in all of these cables around us, that's exactly
12 what we're talking about.  We're not talking
13 about conductors that are three feet away from
14 each other.  They're constrained so that they're
15 in a nice, convenient package.  That's what a
16 bundle of wires is.
17      Q.   Okay.  So one way -- and correct me if
18 I'm wrong.  One way you would determine whether
19 something is a bundle of wires is whether
20 they're all -- all the wires are in a contiguous
21 wrapper or is that the right term?
22      A.   Fine.  I'm happy with wrapper.
23      Q.   I want to use your term.
24      A.   I've been using tube or I've been using
25 sheave.

1  Q.   So can the first surface of -- excuse
2  me.
3       So can the first clamped surface 106a
4  move independently of the uncoupling of base 102
5  and cover 104?
6  A.   Yes.
7       MR. FOSTER:  No more questions.
8       MR. CHIN:  No more questions.
9       MR. FOSTER:  The deposition is closed.
10      THE VIDEOGRAPHER:  This is the end of
11 the deposition.  The time is 3:16.  We are off
12 the record.
13             (FURTHER DEPONENT SAITH NOT.)
14
15
16
17
18
19
20
21
22
23
24
25